UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MAURICE'S JEWELERS II, INC.,

                Plaintiff,

    v.

PANDORA JEWELRY, LLC, a Maryland limited
liability company and PANDORA
FRANCHISING, LLC, a Maryland limited
liability company,

                Defendants.

Civil Action No.: _____

## NOTICE OF REMOVAL

**PLEASE TAKE NOTICE THAT** pursuant to 28 U.S.C. §§ 1441 and 1446, defendants
Pandora Jewelry, LLC and Pandora Franchising, LLC (collectively, "Pandora") hereby remove
this action from the Eleventh Judicial Circuit of Florida to the United States District Court for the
Southern District of Florida.  In support of this Notice of Removal, Pandora states as follows:

### Procedural History

1.     A civil action (hereinafter, the "State Court Action") has been brought in the
Eleventh Judicial Circuit of Florida (the "Florida State Court"), entitled *Maurice's Jewelers II,
Inc. v. Pandora Jewelry, LLC and Pandora Franchising, LLC,* case number 2016-27640-CA.
Plaintiff initiated the State Court Action on October 25, 2016, by filing its Complaint in the
Florida State Court on that date.

2.      Pandora Jewelry, LLC and Pandora Franchising, LLC were each served with a copy of the Summons and Complaint on November 8, 2016.  (*See* Declaration of Matthew Scott in Support of Notice of Removal, "Scott Decl." ¶ 2, attached as Exhibit B).

3.      Plaintiff agreed that Pandora could have until December 16, 2016 to answer or otherwise respond to plaintiff's Complaint.  (Scott Decl. ¶ 2).  The initial time within which Pandora is required by the laws of the State of Florida to answer or otherwise plead in response to plaintiff's Complaint has not expired, and Pandora has not answered or otherwise pleaded in response to the Complaint.

### Grounds for Removal (Diversity Jurisdiction)

4.      The State Court Action is an action over which this Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), in that it is a civil action wherein the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

5.      There is complete diversity between the parties.

6.      "For the purpose of determining diversity jurisdiction, a limited liability company is a citizen of any state of which a member of the company is a citizen." *Flintlock Const. Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1224 (11th Cir. 2013).  "A corporation is considered a citizen of every state in which it has been incorporated and where it has its principal place of business." *Id.;* 28 U.S.C. § 1332(c)(1).

7.      For purposes of diversity jurisdiction, Plaintiff Maurice's Jewelers II, Inc. is (and at the time the State Court action was commenced was) a citizen of the state of Florida. Maurice's Jewelers II, Inc. was incorporated under the laws of Florida and has (and at the time

the State Court action was commenced had) its principal place of business in Miami, Florida. (Complaint ¶ 2).

8.      For purposes of diversity jurisdiction, Defendant Pandora Jewelry, LLC is (and at the time the State Court action was commenced was) a citizen of the state of Maryland.  Pandora Jewelry LLC is (and at the time the State Court action was commenced was) a limited liability company organized under the laws of Maryland with its principal place of business in Maryland. (Complaint ¶ 3; Scott Decl. ¶ 3).  The sole member of Pandora Jewelry, LLC is (and at the time the State Court action was commenced was) Pandora Jewelry, Inc., a corporation incorporated under the laws of Maryland which has (and at the time the State Court action was commenced had) its principal place of business in Maryland.  (Scott Decl. ¶ 3).

9.      For purposes of diversity jurisdiction, Defendant Pandora Franchising, LLC is (and at the time the State Court action was commenced was) a citizen of the state of Maryland. Pandora Franchising, LLC is a limited liability company organized under the laws of Maryland with its principal place of business in Maryland.  (Complaint ¶ 4; Scott Decl. ¶ 4).  The sole member of Pandora Franchising, LLC is (and at the time the State Court action was commenced was) Pandora Jewelry, Inc., a corporation incorporated under the laws of Maryland which has (and at the time the State Court action was commenced had) its principal place of business in Maryland.  (Scott Decl. ¶ 4).

10.      The amount in controversy requirement is satisfied because Plaintiff seeks more than $75,000, exclusive of interest and costs. Among other things, Plaintiff has claimed entitlement to "between $400,000-$500,0000 in build-out expenses", as well as "in excess of $500,000 in initial inventory without a return on its investment."  (Complaint ¶¶ 47, 48, Prayer

for Relief ii).  Plaintiff also claims entitlement to "millions" of dollars invested into the business venture.  (Complaint ¶¶ 45, 48, Prayer for Relief ii).

### The Procedural Requirements for Removal Have Been Satisfied

11.     Pandora Jewelry, LLC and Pandora Franchising, LLC are the only defendants in the State Court action.

12.     Pursuant to 28 U.S.C. § 1446(a), the United States District Court for the Southern District of Florida is the proper court for removal from the Florida State Court .

13.     This Notice of Removal is timely under 28 U.S.C. § 1446(b)(1) because it is filed by Pandora within thirty (30) days after receipt by Pandora, through service or otherwise, of a copy of the Complaint.

14.     True and correct copies of all process, pleadings and orders served on Pandora in the State Court Action (consisting of the Summons and Complaint) are attached collectively hereto as Exhibit A. (Scott Decl. ¶ 5) .

15.     After filing this Notice of Removal, Pandora will promptly serve written notice of this Notice of Removal on counsel for Plaintiff and file the same with the Clerk of the Florida State Court in accordance with 28 U.S.C. § 1446(d).

WHEREFORE, Pandora removes the above-captioned action from the Florida State Court  to the United States District Court for the Southern District of Florida.

December 7, 2016                          Respectfully submitted,

                                         By:  *s/ Harout Jack Samra*
                                             Harout Jack Samra
                                             Florida Bar No. 70523
                                             Harout.Samra@dlapiper.com
                                             200 S. Biscayne Boulevard, Suite 2500
                                             Miami, FL 33131
                                             Telephone: 305-423-8500

Of Counsel:

Barry M. Heller
DLA Piper LLP (US)
barry.heller@dlapiper.com
One Fountain Square
11911 Freedom Drive, Suite 300
Reston, VA 20190-5602
Tel.: 703-773-4245
*Pro hac vice to be filed*

Karen Marchiano
DLA Piper LLP (US)
karen.marchiano@dlapiper.com
2000 University Avenue
East Palo Alto, CA 94303-2214
Tel.: 650-833-2170
*Pro hac vice to be filed*

                                         *Counsel for Defendants Pandora Jewelry, LLC*
                                         *and Pandora Franchising, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF and U.S. Mail on December 7, 2016 on all counsel or parties of record on the Service List below.


_s/ Harout Jack Samra_
Harout Jack Samra


## **SERVICE LIST**

Robert Zarco, Esq
Himanshu M. Patel, Esq.,
Zarco Einhorn Salkowski & Brito, P.A.,
Miami Tower, 100 Southeast 2nd Street, 27th Floor
Miami, Florida 33131
rzarco@zarcolaw.com
hpatel@zarcolaw.com
_Counsel for Plaintiff_

# EXHIBIT A

Filing # 48077053 E-Filed 10/25/2016 04:14:56 PM

IN THE CIRCUIT COURT OF THE 11th
JUDICIAL   CIRCUIT   IN   AND   FOR
MIAMI-DADE COUNTY, FLORIDA

MAURICE'S JEWELERS II, INC.,
a Florida corporation,

GENERAL JURISDICTION DIVISION

     Plaintiff,

vs.

Case No. 2016-27640-CA

PANDORA JEWELRY, LLC,
a Maryland limited liability company
and PANDORA FRANCHISING, LLC,
a Maryland limited liability company,

     Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, MAURICE'S JEWELERS II, INC., hereby sues Defendants, PANDORA JEWELRY, LLC and PANDORA FRANCHISING, LLC, and in support thereof, alleges as follows:

### Parties, Jurisdiction and Venue

1.     This is an action for damages that exceeds the sum of Fifteen Thousand Dollars ($15,000.00), exclusive of interest and costs.

2.     Plaintiff, MAURICE'S JEWELERS II, INC. (hereinafter "MJ"), is a Florida corporation having its principal place of business located at 11401 NW 12th Street, E-1414, Miami, Florida 33172.

3.     Defendant, PANDORA JEWELRY, INC. (hereinafter "PJ"), is a Maryland limited liability company having its principal place of business located at 8671 Robert Fulton Drive, Suite A, Columbia, Maryland 21046.   PJ has transacted business and engaged in tortious and fraudulent

conduct, by affirmative act or omission, in the State of Florida such that it reasonably anticipated being subject to personal jurisdiction before the Courts of this State. PJ has also transacted business and engaged in tortious and fraudulent conduct, by affirmative act or omission, outside of the State of Florida whereby it reasonably anticipated that injury would result and has, in fact, resulted upon persons within the State of Florida.   As such, this Court has personal jurisdiction over PJ pursuant to Fla. Stat. §§48.193(1)(a)(2) and 48.193(1)(a)(6).

4.     Defendant, PANDORA FRANCHISING, LLC (hereinafter, "PF"), is a Maryland limited liability company having its principal place of business located at 8671 Robert Fulton Drive, Suite A, Columbia, Maryland 21046.   PJ has transacted business and engaged in tortious and fraudulent conduct, by affirmative act or omission, in the State of Florida such that it reasonably anticipated being subject to personal jurisdiction before the Courts of this State. PJ has also transacted business and engaged in tortious and fraudulent conduct, by affirmative act or omission, outside of the State of Florida whereby it reasonably anticipated that injury would result and has, in fact, resulted upon persons within the State of Florida.   As such, this Court has personal jurisdiction over PJ pursuant to Fla. Stat. §§48.193(1)(a)(2) and 48.193(1)(a)(6).

5.     Venue is proper in this Court as the causes of action alleged in this Complaint arose and accrued in Miami-Dade County, Florida.

## General Allegations

A.     **The Pandora System**

6.     PJ is the parent company of PF.   PJ is the exclusive North American wholesale distributor of the Pandora brand line of jewelry and fashion products ("Pandora Products") that are sold under the name and trademark Pandora.   PJ sells Pandora Products only to those select retailers that PJ deems to have a reputation for quality that meet PJ's standards for representing

2

the Pandora brand.

7.    From 2007 through 2009, PJ offered licenses in the United States permitting retailers – some of whom operated as Pandora-branded retailers, the right to carry all or a portion of the Pandora product line.

8.    On October 2, 2009, PF was formed for the purpose of granting franchises to qualified persons for the right to own and operate a Pandora Store.    As advertised on the Pandora Group's internet website and its franchising brochure, the franchise concept consists of four different retail formats, three of which are branded and the other retail format is non-branded.

9.    The branded retail formats consist of concept stores, shop-in-shops and gold dealers while the non-branded retail format consists of silver and white dealers.    Below is a description of each of the four retail formats:

> **Concept Store** - A concept store is a full-blown PANDORA store, which carries a complete assortment of PANDORA products, has a branded PANDORA store front and is furnished only with PANDORA fittings and displays.

> **Shop-in-shop** - A shop-in-shop is a clearly defined space in a store or department store dedicated to PANDORA.    The shop-in-shop has PANDORA fittings and displays and carries a wide assortment of PANDORA products.    The shop-in-shop will typically look very much like a concept store on the inside (except smaller), generally without the PANDORA branded store front.

> **Gold dealer** - Gold dealers are multi-brand retailers with a strong PANDORA profile.    Gold dealers receive some but not all of the same benefits as concept stores and shop-in-shops.

> **Silver and White dealer** – The non-branded retail formats consist of silver and white dealers.    Silver dealers are multi-brand retailers carrying a medium assortment.    Silver dealers usually have PANDORA branded fittings in the store, but to a lesser extent than gold dealers.    White dealers are multi-brand retailers carrying a limited assortment.

10.    In 2010, PJ ceased offering license agreements and assigned its existing license agreements to PF.    Such license agreements relate to 21 licensees that operate(d) 28 stores in

3

various parts of the United States, St. Maarten, Aruba and Panama.

11.     PF offered such licensees the opportunity to join the Pandora franchise system. As of December 31, 2010, PF had 47 franchisees operating 103 Pandora outlets throughout the United States.

**B.     The Koppel Family Joins The Pandora System**

12.     In 2007, MJ's principal, Mr. Andrew Koppel, through his entity, Maurice's Jewelers, Inc., entered into a license with PJs under which he opened his first Pandora location in Pinecrest, Florida. This location was opened as a branded, retail location, i.e., a Gold dealer.   In late 2010/early 2011, and in order to remain as a Gold dealer, Mr. Koppel had to purchase new fixtures and change the flooring at the location.   Given that Mr. Koppel intended to relocate his business, Mr. Koppel did not deem it financially viable to invest more money into a location that he intended to leave.   Thus, and given that fact that Mr. Koppel also did not have any Pandora fittings, PJs changed Mr. Koppel's designation from a branded Gold dealer to a non-branded Silver dealer.

13.     Upon information and belief, PF offered Mr. Koppel with an opportunity to bring his non-branded retail store into the Pandora franchise system.   Towards that end, in the latter part of the summer of 2011, PF provided to Mr. Koppel a federally mandated Franchise Disclosure Document ("FDD") as required by the Federal Trade Commission's Franchise Rule ("FTC Franchise Rule") under which PF identified, in detail, the franchise opportunity.   The issuance date of the FDD was March 30, 2011.

14.     Given this opportunity, Mr. Koppel relocated his non-branded retail store to 11865 S. Dixie Highway, Miami, Florida 33156 and in doing so, he expanded the square footage of his location and opened a Pandora franchise under a branded retail format known as a Shop-in-shop.

4

While the cost of initial inventory ranged between $350,000.00 - $450,000.00 as reflected in the FDD, Mr. Koppel had inventory totaling approximately $1,000,000.00.

15.     The franchise term was for a period of 10 years or until the store lease expires without a satisfactory relocation.   As of the date of the filing of this lawsuit, Mr. Koppel's Shop-in-shop store is still open.

**C.     The Koppel Family Opens Its Second (2nd) Pandora Location**

16.     Approximately one (1) month after opening the Shop-in-shop, PJ's advised MJ that PF sought to have a Concept Store at The Falls, located on S.W. 136th Street.   PJ's offered this opportunity to MJ, and two (2) months later, in December 2011, Mr. Koppel opened his second (2nd) Pandora franchise for the operation of a Pandora retail outlet located at 8888 S.W. 136th Street, Miami, Florida 33176.   This time, Mr. Koppel opened a Concept Store.   The initial investment ranged between $502,500.00 to $887,500.00, and the cost of initial inventory remained between $350,000.00 - $450,000.00 per PF's estimates.

17.     The franchise term was for a period of 10 years or until the store lease expires without a satisfactory relocation.   As of the date of this filing, Mr. Koppel's Concept store is still open.   Indeed, Mr. Koppel is recognized by PF as a franchisee in the Pandora franchise system.

**D.     The Koppel Family Opens Its Third (3rd) Pandora Location**

18.     Commencing in 2012 and continuing into 2013, and given the fact that the Koppel family had a right of first refusal, discussions took place between the parties regarding the opening of a third (3rd) Pandora store by the Koppel family with PJ ultimately pressuring the Koppel family into a commitment to open same with the designation of a Silver dealer.   PJ's advised the Koppel family that if they did not commitment to the opening of a Pandora store at Dolphin Mall, PJ's would give such rights to one of the many other parties that sought to open a store at Dolphin Mall.

5

19.     Despite being designated as a Silver dealer because PJ's did not intend to permit MJ to purchase Pandora showcases being in an "outlet" mall, PJ's made it explicitly clear to MJ that as a Silver dealer, it would have permitted to carry all products as opposed to a medium assortment.[1]   The only items that MJ would not be permitted to carry was watches.   Put another way, despite being instructed open as a Silver dealer, PJ's made it explicitly clear to MJ that its offerings and revenue would be more in line with a "small concept store."   In fact, PJ's sought to review and did, in fact, review MJ's layout for the store similar to the manner in which it reviewed the layout for Mr. Koppel Concept Store. PJ's also assisted MJ to obtain more square footage for its location.

20.     In late 2013, PJ's pressed MJ to provide a firm commitment regarding an opening date in 2014.   And if not in 2014, PJ demanded that MJ's provide a firm date in 2015 when it planned to open; otherwise, MJ's would lose the right to go into Dolphin Mall.

21.     On or about March 24, 2014, and in reliance on PJ's promise, representation and assurance that MJ's new store would be like a "small concept store," MJ proceeded to obtain a proposal for architectural services for its newest proposed Pandora store.   Such proposal totaled the sum of $14,500.00.   Meanwhile, the preliminary budget for the construction of the Pandora outlet was approximately between $400,000.00 - $500,000.00.

22.     In early June 2014, and at PJ's request, MR completed a Store Opening and Upgrade Application, along with some additional documentation needed by PJ in connection with the opening of the newest location at Dolphin Mall.

---

[1] For example, PJs permitted MJ to purchase the following items: (i) Pandora Ring Fixture Showcase; (ii) Pandora Compose/Pendant Tower Showcase; (iii) all Pandora displays; (iv) Pandora trays; (v) Pandora selling materials; and (vi) Pandora catalogs.   MJ was only permitted to purchase all Pandora packaging, including but not limited to, boxes, bags, tissue, ribbon, etc.   MJ was only permitted to have visual artwork images with advertising throughout the location.

6

23. On June 24, 2014, and in continued reliance on PJ's promise, representation and assurance that MJ's Pandora location would be like a "small concept store," MJ executed a Lease Agreement with Dolphin Mall Associates, LLC ("Dolphin Mall") for the opening of its newest Pandora store. The term of the Lease Agreement was for six (6) years.

24. In November 2014, MJ opened its Pandora retail store at Dolphin Mall. MJ's initial inventory purchase totaled $517,000.00, which was towards the higher end of the estimated range between $350,000.00 - $550,000.00. For reasons unknown, PF did not provide to MJ a FDD at least ten (10) business days before its execution of documents with PJ and PF and before its acceptance of any money from MJ.

25. Similar to Mr. Koppel's other two (2) locations, PJ's provided to MJ net 90 terms for all orders from the start kit (which included the holidays), along with their back-orders. In all other respects, PJ's updated the account to provide MJ with net 30 terms. Prior to opening, PJ provided MJ with set-up and training assistance.

26. Within one (1) month of opening, and despite being pegged as a "Silver" dealer that typically generates annual sales of approximately $80,000.00, MJ generated sales of approximately $329,000.00 within its initial six (6) weeks of opening for business. Indeed, MJ's sales volume was more in line with the Concept Store owned by the Koppel family.

27. Within a few months of opening, MJ started to encounter problems. Despite its previous promise, representation and assurance that the Dolphin Mall location would be like a "small concept store," PJ did not permit MJ to purchase the full line of Pandora offerings. Specifically, MJ was not permitted to purchase the Disney, Essence or Rose collections that were offered by Pandora at all of its Concept Stores and other dealer levels. Remarkably, MJ is the only Pandora dealer in the area, including other "Silver" dealers, that is not permitted to purchase

7

all Pandora products.

28.     On April 20, 2015, and given the business that MJ was losing due to its inability to purchase for resale the Disney, Essence and Rose collections, the Koppel family forwarded a letter to PJ explaining that MJ's (and Pandora's) financial growth was being stymied due to MJ not being provided with the opportunity to sell the Disney, Essence and Rose collections at Dolphin Mall. Based on the data gathered by the Koppel family, MJ stood to conservatively lose revenues in excess of $1,500,000.00 by not having access to the Disney, Essence and Rose collections. Notwithstanding, in 2015 alone, MJ sold in excess of $2,200,000.00 in inventory, which was greater than most Pandora concept stores throughout the world..

29.     MJ's pleas for assistance fell on deaf ears over the course of the next eighteen (18) months.    Instead, on October 3, 2016, and without any advance notice, PJ sent to MJ, via courier, a termination notice pursuant which PJ terminated MJ's status as an authorized dealer of Pandora Products, effective immediately.    By terminating MJ's rights as a Pandora dealer without providing MJ without an opportunity to cure its alleged default, the termination was wrongful. As a result of the termination, MJ is now left with outstanding rent obligations for a little over four (4) years without having the requisite income to support its monthly rental obligations.    At the time of termination, MJ was on target to generate annual sales of approximately $3,000,000.00.

30.     Had MJ known it advance that PJ's promise, representation and assurance that its store at Dolphin Mall would be like a "small concept store" and that it would not be permitted to purchase all Pandora collections (i.e., Disney, Essence and Rose) that were available to all other stores similar in level, size and/or volume, MJ would never have proceeded to enter into a Lease Agreement at Dolphin Mall and invested millions of dollars into the business venture.

31.     Upon information and belief, MJ submits that PJ terminated MJ's rights without

8

having any valid legal basis whatsoever.    Instead, PJ seeks to capitalize on the business generated at Dolphin Mall in order to open a corporate store at Dolphin Mall or, in the alternative, sell such rights to an alternative, preferred multi-unit dealer.

32.    All conditions precedent to bringing this action have been waived, excused, performed, or otherwise occurred.

33.    As a result of Defendant's wrongful conduct, described herein, and MJ's need to protect and enforce its legal rights, MJ has retained the undersigned attorneys and is obligated to pay said firm attorneys' fees.    Pursuant to applicable law, MJ seeks to recover its attorneys' fees and costs from Defendant.

## LEGAL CAUSES OF ACTION

### Count I – Violation Of Florida Deceptive And Unfair Trade Practices Act
### (Against Pandora Franchising)

34.    MJ incorporates each and every allegation set forth in Paragraphs 1 through 33, *supra*, as if fully set forth herein.

35.    This is an action for violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.203(3) ("FDUTPA").

36.    PF is engaged in the conduct of trade and commerce in the State of Florida.

37.    The statute also provides that the Florida courts must give "due consideration and great weight" to the Federal Trade Commission and federal court interpretations of section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. §45(a)(1).    *See* Fla. Stat. §501.204(2).    In another words, violations of the FTC Franchise Rule are also violations of FDUTPA.

38.    By failing to provide to MJ a copy of a FDD at least ten (10) business days before MJ's execution of documents and before acceptance of any money from MJ, PF violated the FTC Franchise Rule. Through its violation of the FTC Franchise Rule, PF's conduct was in violation of

FDUTPA.

39.     As a direct, proximate and foreseeable result of PF's violation of the Florida Deceptive and Unfair Trade Practices Act, MJ has suffered and continues to suffer actual damages.

40.     Pursuant to Fla. Stat. §501.205, MJ is entitled to recover its reasonable attorneys' fees and costs from PF.

**Count II – Promissory Estoppel**
**(Against Pandora Jewelry)**

41.     MJ incorporates each and every allegation set forth in Paragraphs 1 through 33, *supra*, as if fully set forth herein.

42.     PJ, through its authorized representative(s) promised, represented and assured MJ that , while designated as a "Silver" dealer at Dolphin Mall, MJ would, in reality, be like a "small concept store."   In direct and detrimental reliance on PJ's promise, representation and assurance that MJ would be like a "small concept store" at Dolphin Mall, MJ executed a six (6) year lease with Dolphin Mall and invested millions of dollars into the business venture.

43.     MJ undertook such a business venture knowing that as a "small concept store" that would be permitted to purchase all of the Pandora products, it would be able to recoup its investment garnering a commercially reasonable rate of return during the entirety of its lease with Dolphin Mall.

44.     PJ knew and/or should have reasonably known that MJ would detrimentally rely on Defendant's promise, representation and assurance. But for PJ's promise, representation and assurance to MJ that, despite being designated as a "Silver" dealer, it would be like a "small concept store" entitled to purchase all Pandora products, MJ would PJ did not permit MJ to purchase the full line of Pandora offerings.   Specifically, MJ would never have proceeded to enter into a Lease Agreement at Dolphin Mall and invested millions of dollars into the business venture.

10

45.     After signing the Lease Agreement, having invested millions of dollars into the business venture and having had an outstanding initial month that generated sales akin to its existing Concept Store, as opposed to a typical Silver dealer, MJ came to learn that PJ did not intend to permit MJ to purchase the full line of Pandora offerings.  Specifically, MJ was denied the opportunity to purchase the Disney, Essence or Rose collections that were offered by Pandora at all of its Concept Stores.

46.     Had MJ known it advance that PJ's promise, representation and assurance that its store at Dolphin Mall would be like a "small concept store" and that it would not be permitted to purchase all Pandora collections (i.e., Disney, Essence and Rose) that were available to all other stores similar in level, size and/or volume, MJ would never have proceeded to enter into a Lease Agreement at Dolphin Mall and invested millions of dollars into the business venture.

47.     As a result of MJ's detrimental reliance on PJ's promise, representation, and assurance that MJ's Pandora Store, while classified as a Silver dealer, was, in reality, a "small concept store," MJ entered into a six (6) year Lease Agreement with Dolphin Mall, spent between $400,000 - $500,000.00 in build-out expenses and purchased in excess of $500,000.00 in initial inventory without a return on its investment as a result of the wrongful termination of its rights.

48.     As a direct, proximate and foreseeable result of PJ's wrongful conduct, MJ has suffered and continues to suffer substantial damages.  Injustice can only be avoided by awarding damages to MJ as a result of PJ's breach of its promise, representation and assurance, including but not limited to, the substantial investment it made into the opening of a Pandora Store at Dolphin Mall and the profits it stood to make during the four (4) years remaining on the Lease Agreement.

## PRAYER FOR RELIEF

Plaintiff, MAURICE'S JEWELERS II, INC., respectfully requests that this Honorable

11

Court enter a judgment in its favor and against Defendants, PANDORA JEWELRY, LLC and PANDORA FRANCHISING, LLC, for:

(i)   actual damages in favor of Maurice's Jewelers II and against Pandora Franchising as a result of Pandora Jewelry's violation of the Florida Deceptive and Unfair Trade Practices Act;

(ii)   damages in favor of Maurice's Jewelers II and against Pandora Jewelry as a result of its detrimental reliance on Pandora Jewelry's promise, representation and assurance that Maurice's Jewelers II, despite being designated as a "Silver" dealer, would, in reality, be like a "small concept store" and then being deprived of the opportunity to purchase all Pandora offerings that were available to all other stores similar in level, size and/or volume;

(iii)   attorneys' fees, costs and pre-judgment and post-judgment interest; and

(iv)   such other and further relief as this Honorable Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, MAURICE'S JEWELERS II, INC., respectfully demands a trial by jury of all issues so triable under the laws of the State of Florida.

Dated: October 25, 2016                         Respectfully submitted,

ZARCO EINHORN SALKOWSKI & BRITO, P.A.
*Counsel for Plaintiff*
Miami Tower
100 Southeast 2nd Street, 27th Floor
Miami, Florida 33131
Telephone:   (305) 374-5418
Telecopier:   (305) 374-5428

By: /s/ Himanshu M. Patel
        ROBERT ZARCO
        Florida Bar No. 502138
        E-mail: rzarco@zarcolaw.com
        HIMANSHU M. PATEL
        Florida Bar No. 0167223
        E-mail: hpatel@zarcolaw.com
        E-mail: acoro@zarcolaw.com

12

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MAURICE'S JEWELERS II, INC.,

                Plaintiff,

    v.

PANDORA JEWELRY, LLC, a Maryland limited
liability company and PANDORA
FRANCHISING, LLC, a Maryland limited
liability company,

            Defendants.

Civil Action No.:

## DECLARATION OF MATTHEW SCOTT IN SUPPORT OF NOTICE OF REMOVAL

1.      My name is Matthew Scott. I am the Vice President, Legal, and General Counsel for defendants Pandora Jewelry, LLC and Pandora Franchising, LLC (collectively, "Pandora"). I have personal knowledge of the matters set forth in this Declaration and would be willing and able to testify thereto if and when called upon to do so.

2.      On November 8, 2016, Pandora Jewelry, LLC and Pandora Franchising, LLC were each served with a copy of the Summons and Complaint in *Maurice's Jewelers II, Inc. v. Pandora Jewelry, LLC and Pandora Franchising, LLC,* case number 2016-27640-CA in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida (the "State Court Action"). Plaintiff agreed with our outside counsel that Pandora Jewelry, LLC and Pandora Franchising, LLC could have until December 16, 2016 to answer or otherwise respond to Plaintiff's Complaint.

3.     Defendant Pandora Jewelry LLC is (and at the time the State Court Action was commenced was) a limited liability company organized under the laws of Maryland with its principal place of business in Maryland.  The sole member of Pandora Jewelry LLC is (and at the time the State Court Action was commenced was) Pandora Jewelry, Inc., a corporation incorporated under the laws of Maryland which has (and at the time the State Court Action was commenced had) its principal place of business in Maryland.

4.     Defendant Pandora Franchising, LLC is (and at the time the State Court Action was commenced was) a limited liability company organized under the laws of Maryland with its principal place of business in Maryland.  The sole member of Pandora Franchising, LLC is (and at the time the State Court Action was commenced was) Pandora Jewelry, Inc., a corporation incorporated under the laws of Maryland which has (and at the time the State Court Action was commenced had) its principal place of business in Maryland.

5.     True and correct copies of all process, pleadings and orders served on Pandora in the State Court Action (consisting of the Summons and Complaint) are attached collectively to the Notice of Removal as Exhibit A.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 5, 2016 in Baltimore, Maryland.

MATTHEW SCOTT

EAST\137364966.2